UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARY BELLE GREENLAW,<br><br>   Petitioner,<br><br> v.<br><br>SHEILA MITCHELL, Santa Clara County Chief Probation Officer; KAMALA D. HARRIS, Attorney General of California,<br><br>   Respondent.<br>               / | No. C 12-1598 JSW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

Petitioner Rosemary Belle Greenlaw, on probation and proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from her state court conviction. The Court ordered Respondents to show cause why the writ should not be granted. Respondents filed an answer and a memorandum of points and authorities in support, and lodged exhibits with the Court. Petitioner has filed a traverse. For the reasons set out below, the petition is DENIED.

## BACKGROUND

### I. Procedural Background

On May 10, 2006, the Santa Clara County District Attorney filed a felony complaint alleging that Petitioner committed grand theft. On February 16, 2007, following a preliminary hearing, an information was filed adding counts 2 and 3 for recording two false instruments. A jury found Petitioner not guilty of grand theft, but found her guilty of the two counts of recording false instruments. The trial court sentenced Petitioner to serve three

1  years on probation, to perform community service and to pay a fine and restitution.

2      On direct appeal, in an unpublished decision, the California Court of Appeal reversed
3  one of the counts and remanded for re-sentencing. The California Supreme Court denied a
4  petition for review. On remand, the trial court re-sentenced Petitioner to serve two years on
5  probation, to perform community service and to pay a fine and restitution. Petitioner
6  appealed the re-sentencing order. The Court of Appeal remanded for the trial court to
7  reconsider the question of restitution. On June 17, 2010, the California Supreme Court,
8  without comment, denied a petition for review.

9      On re-sentencing, the trial court again ordered that Petitioner pay victim restitution.
10 Petitioner appealed this order, which was affirmed by the Court of Appeal. On October 19,
11 2011, the California Supreme Court, without comment, denied the petition for review.

12     On March 30, 2012, Petitioner filed the instant federal habeas petition raising nine
13 claims. On May 1, 2012, in an order to show cause, the Court found that five claims and part
14 of claim two did not state cognizable grounds for habeas relief. The Court ordered
15 Respondents to file an answer showing cause why Petitioner should not be granted relief on
16 the cognizable claims.

17     On June 13, 2012, Respondents filed a motion to dismiss all but one claim for lack of
18 exhaustion. On December 19, 2012, the Court granted the motion and directed Petitioner to
19 notify the Court of how she would like to proceed with her petition. On April 17, 2013,
20 Petitioner filed a notice of election arguing that exhaustion should be excused and,
21 alternatively, that she wished to amend the petition to dismiss the unexhausted claims and
22 proceed with the fifth claim, the one that was exhausted. On May 2, 2013, the Court issued
23 an Order dismissing the unexhausted claims and ordering Respondents to show cause why
24 the petition should be granted based upon Petitioner's fifth claim. On June 13, 2013,
25 Respondents filed their answer and, on July 10, 2013, Petitioner filed her traverse.

26 //
27 //
28

## II. Factual Background

The Court of Appeal found the facts of Petitioner's offense as set forth below.[1]

Defendant owned a townhome that was part of a four-unit complex. In 2003 the other units were owned by Scott Owens, Rex Churchward, and Nick Ginsburg. The HOA that governed the complex was organized as a corporation and managed by the individual owners. The HOA held annual meetings, usually in the spring.

Minutes of the March 22, 2003 meeting showed that Owens was elected treasurer/secretary that day; Churchward was elected vice president and Ginsburg was elected president. At the same meeting, the HOA removed defendant "from signature authority for any [HOA] bank accounts." Minutes of a meeting held on August 9, 2003, showed that the HOA passed a financial policy that limited access to the HOA bank accounts to Ginsburg, Churchward, and Owens as president, vice president, and secretary/treasurer, respectively. Defendant's reference to the HOA officers in a November 2003 letter to Ginsburg conflicted with the information contained in the minutes. Defendant wrote to Ginsburg, "[Y]ou stated that you are now the treasurer and secretary, as well as the president, in spite of the fact that California law prohibits an association's president from the concurrent offices of secretary or treasurer." On October 20, 2003, defendant filed a statement of information with the Secretary of State in which she listed herself as secretary and chief financial officer. This filing was the basis for the charge in count 2.

By the time of the 2004 annual meeting, Tower Adams had purchased Owens's townhome. Adams soon learned that defendant had had some prior dispute with the other homeowners. In an effort to reconcile all the HOA members, Adams convinced his fellow homeowners to elect defendant to the office of secretary. Adams was elected treasurer. Minutes of the March 20, 2004 meeting prepared by Churchward corroborated Adams's account. Adams's signature on those minutes is dated June 11, 2005. A second set of minutes for the same meeting prepared by defendant shows the treasurer position as unfilled. These minutes reflect acts that do not appear in Churchward's version and are the only minutes submitted at trial that bear the HOA corporate seal.

The dispute that led to the theft charge began on February 29, 2005. Ginsburg had died and David Gage was in the process of purchasing his townhome from the Ginsburg estate. The title company involved in the transaction wrote to defendant asking her for information about the HOA and whether the HOA was planning any assessments. Defendant responded that roof repairs and painting were anticipated and that a special assessment of $3,500 per unit was planned and that there would be a $125 fee for document preparation. Accordingly, Gage caused funds to cover these charges to be placed in escrow for distribution to the HOA upon closing. The title company asked Adams for instructions about where to deposit the funds. Adams claimed there was no proposed assessment but realized that the money in escrow had to go somewhere and, therefore, instructed the title company to deposit the money into the HOA's general operating account at Bank of America. Believing the money belonged to Gage, Adams intended to return it to him. But before Adams was able to do anything with the funds, defendant withdrew the money and placed it in another account in a different bank in

---

[1]The Court of Appeal's summary constitutes a factual finding that is presumed correct under 28 U.S.C. § 2254(e)(1). *See Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002).

3

the name of the HOA. Sometime in April 2005, Adams discovered the money was missing from the Bank of America account. He reported the loss to the police on May 4, 2005, accusing defendant of having stolen the money from Gage.

Bank of America, which had improperly allowed defendant to withdraw the funds when she had no authority to do so, reimbursed the HOA for the mistake by re-depositing the amount withdrawn into the HOA account. By the time of trial, that money was still in one of the HOA accounts. Adams did not know what happened to the money defendant had withdrawn. Gage's realtor clarified that the funds originally deposited into the escrow had not come from Gage's pocket but had been placed in escrow by the sellers to pay for the proposed painting and roof assessment.

At a HOA meeting on June 11, 2005, attended only by Adams, Gage, and Churchward, the HOA elected Gage as president and secretary, Churchward as vice president, and Adams as treasurer. Adams testified that the HOA had excluded defendant from any HOA office due to her uncooperative conduct. On September 19, 2005, defendant filed another statement of information with the Secretary of State, again listing herself as secretary and chief financial officer. This filing was the basis for the charge in count 3.

*People v. Greenlaw*, Nos. H032961, H034299; 2010 WL 569941, *2-3 (Cal. Ct. App. Feb. 18, 2010) (unpublished).

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court authority under the first clause of Section 2254(d)(1) only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant

4

state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Federal habeas relief is available only if the state court's application of federal law is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'" *Nevada v. Jackson*, __ U.S. __, 133 S. Ct. 1990, 1992 (2013) (citing *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011)).

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).  In the present case, the California Court of Appeal is the highest court that addressed Petitioner's claim in a reasoned opinion and it is that decision that the Court reviews.

## DISCUSSION

The only claim that is before the Court for review is Petitioner's fifth claim, which she presents in her petition as follows: "Whether the Sixth Amendment right to counsel of one's choice is violated when the court denies the defendant's request to change attorneys as soon as the fundamental disagreement arises and without any evidence of an unreasonable disruption or delay?"  Petition at 3.

### I. State Court Opinion

The California Court of Appeal denied this claim as follows:

> Defendant next argues that she was deprived of her right to counsel, as guaranteed by the Sixth Amendment to the United States Constitution, when the trial court denied her request to discharge her retained counsel.  We conclude that, under the circumstances, the trial court did not err in refusing the request.
>
> **1. Background**
>
> At the pretrial conference on Thursday, October 11, 2007, the prosecutor informed the court of several pending settlement offers, which the prosecutor intended to leave open

5

until "Monday morning when the jury is brought in." The offers all required a plea of guilty or no contest to misdemeanor violations of several different code sections. Defense counsel mentioned an additional offer, then stated, "I think the court should also, we should also recognize that there's a substantial danger of [defendant] being convicted, in my opinion, of the two nonalternative felonies, the [Penal Code section] 115 [charges], and I would advise [defendant] to seriously continue to consider this offer, and if she has questions to ask me, ask another lawyer, get a second, third, fourth opinion while we still can."

The court asked defendant if she understood what her lawyer had said and defendant, who is an attorney herself, responded, "Yes. And my concern was moral turpitude, some of the language in the statute, and apparently there is no movement on that issue." The court responded, "The suggestion maybe to get a second opinion may not be a bad suggestion, but I'll let you make that decision." Court was recessed until Monday, October 15, 2007, for jury selection.

On Monday, defendant asked the court for leave to discharge her retained counsel. The court reporter was unable to provide a transcript of the proceedings that day and, therefore we ordered the trial court to prepare a settled statement, which we have made part of the record on appeal. FN4  In pertinent part, the statement is as follows:

> FN4: The settled statement was prepared in compliance with this court's order of December 9, 2008, and its accuracy and inclusion in the record are not questioned in this appeal.

"A request by the defendant to discharge her retained counsel was held outside of the presence of the jury.  At the beginning of the hearing, the defendant indicated that she was making the request because of ineffective assistance of counsel.  Thereupon the court excused the prosecutor and ordered that the hearing be a closed hearing. . . .

"The defendant orally stated her reasons for wishing to discharge her attorney.  They were principally that the attorney had advised the defendant to accept the prosecutor's offer to settle the case by pleading 'no contest' to a misdemeanor in exchange for the court sentencing her to two years court probation i.e., informal probation, with no custody time.  When she would not accept that settlement, she said that her attorney was exasperated with her and that she feared that he was not prepared to go to trial and would not fulfill his professional responsibilities to use his best efforts to advocate her case during trial. In the event that the request were [sic] granted, the defendant said that she would seek a continuance in order to retain new counsel or ask the court to appoint counsel to represent her.

"The defense attorney responded that he had recommended that the defendant accept the prosecutor's settlement offer, but upon her failure to do so, he was prepared, willing, and intended to represent his client's interests in trial to the best of his ability.

"In view of the fact (1) that the trial had begun and was in the second day of jury selection; (2) that discharge of defendant's attorney would necessitate a delay of the trial, and (3) that the grounds for the request (i.e., ineffective assistance of counsel) appeared not to be genuine and unlikely to occur, the court found that granting the request would result in a disruption of the orderly administration of justice and was, therefore, untimely.  Consequently, the court denied the defendant's request to discharge her attorney."

6

## 2. Analysis

A criminal defendant has the right to discharge retained counsel with or without cause. (*People v. Ortiz* (1990) 51 Cal. 3d 975, 983-984.) However, "[a] nonindigent defendant's right to discharge his retained counsel . . . is not absolute. The trial court, in its discretion, may deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' [citations]. As the court stated in *Sampley v. Attorney General of North Carolina* (4th Cir. 1986) 786 F.2d 610, 613, the 'fair opportunity' to secure counsel of choice provided by the Sixth Amendment 'is necessarily [limited by] the countervailing state interest against which the sixth amendment right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of "assembling the witnesses, lawyers, and jurors at the same place at the same time." (*Ibid.*) Thus, a "defendant who desires to retain his own counsel is required to act with diligence and may not demand a continuance if he is unjustifiably dilatory or if he arbitrarily desires to substitute counsel at the time of the trial." (*People v. Blake* (1980) 105 Cal. App. 3d 619, 623-624.)

Granting a continuance for the purpose of retaining private counsel is within the sound discretion of the trial court. No mechanical test is employed; each case is decided on its own facts. The burden is on the defendant to show that the trial court abused its discretion. (*People v. Blake*, 105 Cal. App. 3d at 624.) In deciding whether the denial of a continuance was so arbitrary as to violate due process, the reviewing court looks to the circumstances of each case, placing particular focus upon the reasons presented to the trial judge at the time the request was denied. *(People v. Courts* (1985) 37 Cal. 3d 784, 791.)

. . .

Defendant made her motion after trial had begun and she did so with no idea of who might replace him. The lateness of her request, the uncertainty of actually retaining counsel, and the need for orderly and expeditious administration of justice support the trial court's exercise of discretion in denying the request. (*Cf. People v. Turner* (1992) 7 Cal. App. 4th 913, 919.)

Defendant argues that she had a good faith reason for wanting to discharge her retained attorney. She had lost confidence in her attorney because he had urged her to accept the prosecution's settlement offer and had become frustrated with her refusal to consider it. The problem is much like that described in *People v. Keshishian* (2008) 162 Cal. App. 4th 425, 429, where the appellate court upheld the trial court's rejection of the defendant's last minute attempt to discharge counsel: "Appellant asked for and was given an opportunity to address the court concerning his desire to discharge counsel and his reasons for doing so. He stated only that he had 'lost confidence' in his attorneys. This request was made on the day set for trial after the case had been pending for two and a half years. An indefinite continuance would have been necessary, as appellant had neither identified nor retained new counsel. Witnesses whose appearances had already been scheduled would have been further inconvenienced by an indefinite delay. The right to counsel cannot mean that a defendant may continually delay his day of judgment by discharging prior counsel, and the court is within its discretion to deny a last-minute motion for continuance to secure new counsel. [Citations.] That appellant had inexplicably 'lost confidence' in his experienced and fully prepared counsel did not constitute good cause for granting the continuance requested, nor justify the disruption to the judicial process that would have ensued."

7

> In the present case, the trial court implicitly found that the difference of opinion pertaining to whether or not defendant should accept the prosecution's offer of settlement was not so egregious as to infect counsel's ability to represent defendant or his preparedness for trial. The court balanced defendant's expressed concerns with the court's own findings and concluded that the motion should be denied. There was no abuse of discretion.
>
> Defendant argues that the trial court incorrectly applied a *Marsden* type FN5 standard in rejecting her request. Defendant is correct that a *Marsden* hearing, at which the court determines whether counsel is providing ineffective assistance or whether the attorney client relationship has irremediably deteriorated, is not an appropriate vehicle for considering defendant's complaints against retained counsel. (*People v. Hernandez* (2006) 139 Cal. App. 4th 101, 108.) The applicable test for retained counsel requires the trial court to balance the defendant's interest in new counsel against the potential disruption flowing from the substitution. (*People v. Keshishian*, 162 Cal. App. 4th at 429.) Here, the court rejected defendant's request for three stated reasons, untimeliness, the delay that would result if the request were granted, and the court's finding that the basis for the request, which was defendant's claim of ineffective assistance, was "not genuine." Thus, the court used the proper standard and did not reject the motion based solely upon its assessment of counsel's effectiveness.
>
>     FN5    *People v. Marsden* (1970) 2 Cal.3d 118.

*Greenlaw*, 2010 WL 569941, at *8-11.

## II. Federal Authority

The Sixth Amendment right to counsel includes a qualified right of the criminal defendant to have the counsel of his choice if he can pay for it. *Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *Wheat v. United States*, 486 U.S. 153, 159, 164 (1988). The erroneous deprivation of the right to counsel of choice qualifies as structural error, that is, prejudice need not be shown for there to be a constitutional violation. *Gonzalez-Lopez*, 548 U.S. at 150. However, a trial court has wide latitude in balancing the right to counsel of choice against the needs of fairness and the demands of the court's calendar. *Id.* at 152; *see also United States v. Stites*, 56 F.3d 1020, 1024, 1026 (9th Cir. 1995) (right to counsel may be overcome by showing of a serious potential for conflict, or that the proposed choice will interfere with integrity of the proceeding). Trial courts, therefore, "retain the discretion to 'make scheduling and other decisions that effectively exclude a defendant's first choice of counsel.'" *Miller v. Blacketter*, 525 F.3d 890, 895 (9th Cir. 2008) (citing *Gonzalez-Lopez,* 548 U.S. at 152*).*

When a requested continuance arguably implicates a defendant's Sixth Amendment

8

right to counsel, the court must consider the effect of its decision on this fundamental right. *United States v. Garrett*, 179 F.3d 1143, 1145 (9th Cir. 1999) (en banc); *see also Miller*, 525 F.3d at 896-98 (denial of public defender's motions to withdraw and to continue the trial so that petitioner could retain a private attorney did not violate petitioner's Sixth Amendment right to choice of counsel because (1) petitioner had not yet retained a new attorney, (2) public defender was sufficiently prepared for trial, and (3) motions were made the morning trial was set to begin). The trial courts' difficult task "of assembling the witnesses, lawyers and jurors at the same place and at the same time . . . counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence on expeditiousness in the face of a justifiable request for delay violates'" the defendant's right to counsel of choice. *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (citing *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964)); *Houston v. Schomig*, 533 F.3d 1076, 1079 (9th Cir. 2008).

## III. Analysis

Habeas relief is not warranted here. The Court of Appeal reasonably found that the lateness of Petitioner's request to discharge her attorney, the uncertainty of actually retaining different counsel and the need for the orderly and expeditious administration of justice all supported the trial court's exercise of its discretion in denying her request. *See Gonzalez-Lopez*, 548 U.S. at 152 (trial courts are accorded wide latitude in balancing the right to counsel of choice against needs of fairness and demands of its calendar). A continuance on the day of jury selection would, invariably, have inconvenienced witnesses, jurors, the court and counsel. *See Morris*, 461 U.S. at 11-12 (trial courts' burden of assembling witnesses, lawyers and jurors at the same place and at the same time . . . counsels against continuances except for compelling reasons). Petitioner offered no compelling reason for the delay.

The main reason Petitioner offered for her motion to discharge counsel was her dissatisfaction with counsel's advice to accept the prosecution's settlement offer. The Court of Appeal reasonably found that that this difference of opinion was not so egregious as to infect counsel's ability to represent Petitioner.

9

Petitioner contends that she also argued to the trial court that her attorney was not prepared to put on a defense. However, a review of the record supports the trial court's finding that ineffective assistance of counsel was "unlikely to occur." The record shows that counsel was prepared to put on a defense and, in fact, diligently and effectively represented Petitioner. For instance, counsel cogently argued a pre-trial motion that counts 2 and 3 should be dismissed for insufficient evidence; Reporter's Transcript (RT) at 3-19; counsel vigorously cross-examined Tower Adams, the main prosecution witness, RT at 87-151; 170-252; after the close of the prosecution's case, counsel argued a motion for acquittal on counts 2 and 3 for insufficient evidence, RT at 393-401; and counsel made a passionate closing argument, RT at 446-68. The fact that that the jury found Petitioner not guilty of the most serious charge of felony grand theft demonstrates the effectiveness with which counsel represented her.

Petitioner argues that, because *Gonzales-Lopez* does not allow for harmless error analysis, the Court of Appeal unreasonably affirmed the trial court's denial of her right to representation of her choice. Although *Gonzalez-Lopez* held that the denial of the defendant's Sixth Amendment right to retained counsel of choice was structural error, it also held that the right was not absolute and may be limited by needs of fairness and the demands of the court's calendar. *Gonzalez-Lopez*, 548 U.S. at 152. The Court of Appeal used this standard in reviewing the trial court's decision and reasonably found that the trial court's reasons for denying Petitioner's motion fell within the acceptable limitations placed on the right to counsel of choice.

Petitioner also argues that the trial court incorrectly applied the standard articulated in *People v. Marsden*, 2 Cal. 3d 118 (1970) in reviewing her motion to discharge her counsel. In rejecting this argument, the Court of Appeal acknowledged that a *Marsden* hearing, at which a trial court determines whether counsel is providing ineffective assistance or whether the attorney client relationship has irredeemably deteriorated, was not appropriate for considering Petitioner's complaints against retained counsel. *Greenlaw*, 2010 WL 569941, at *11. However, the Court of Appeal reasonably concluded that the trial court's stated grounds for rejecting Petitioner's motion—untimeliness, the delay that would result if the request were

10

1 granted, and the court's finding that the basis of the request was not genuine—met the proper
2 standard for reviewing Petitioner's motion.  The Court of Appeal's conclusion comports with
3 established Supreme Court authority.  *See Gonzalez-Lopez*, 548 U.S. at 152; *Morris*, 461 U.S.
4 at 11-12.

Petitioner argues that, had her motion been granted, there would have been no delay because she indicated she would represent herself.  No evidence in the record supports the fact that Petitioner moved to represent herself and that she would have been able to do so without a significant continuance to allow her time to prepare.  Furthermore, her claim that she thought she would have been better off representing herself than with counsel is belied by her contradictory claim that, because the trial court dismissed counsel after the trial, she "was then left in the lurch . . . leaving her unrepresented at many post-trial hearings prior to sentencing." Petition at 2.

Petitioner argues that the lack of a transcript of the hearing on her motion is sufficient to grant habeas relief.  As indicated by the Court of Appeal, the court reporter could not provide a transcript of the motion hearing and the Court of Appeal ordered the trial court to prepare a settled statement, which was made part of the record on appeal.  *Greenlaw*, 2010 WL 569941, at *9 n.4.[2]  Petitioner cites two pre-AEDPA cases from other circuits to support her argument. In *Johnson v. Henderson*, 509 F.2d 121, 122 (5th Cir. 1975), the court remanded a habeas petition to the district court because the record did not contain a transcript of the trial.  This case is inapplicable because here the transcript of a motion hearing is missing, not the transcript of the entire trial.  In *Tague v. Puckett*, 874 F.2d 1013, 1014-15 (5th Cir. 1989), the court affirmed the grant of habeas relief to a petitioner who was denied the transcript of proceedings of his mistrial that he wished to use in his defense during his re-trial.  The court

---

[2] Rule 8.346 of the California Rules of Court provides, "As soon as a party learns that any portion of the oral proceedings cannot be transcribed, the party may serve and file in superior court an application for permission to prepare a settled statement."  "The purpose of a settled statement is to provide the appellate court with a record of the trial court proceedings for which there is no formal contemporary record, commonly because the court reporter's notes have been lost or because a court reporter was not present to record the proceedings."  *People v. Anderson*, 141 Cal. Appl. 4th 430, 440 (2006).

11

held that counsel's memory and trial notes did not furnish an adequate substitute for the trial transcript. *Id.* at 1015.  This case is inapplicable because the transcript of the entire trial was denied to the petitioner.  Here, the missing transcript consists of a hearing on one motion. Furthermore, the transcript was not denied specifically to Petitioner; the Court of Appeal also could not obtain a copy of the transcript and, thus, required the trial court to prepare a settled statement.  Petitioner's argument that the lack of a transcript is sufficient to warrant habeas relief is without merit.

Petitioner presents other arguments which are not relevant to her Sixth Amendment claim of denial of counsel of her choice.  For instance, Petitioner argues that insufficient evidence supported her convictions, Petition at 8, the trial court allowed the jury to hear inadmissible evidence, Petition at 9, and she was innocent of count three, Petitioner's Declaration in Support of Traverse at 2.  The Court need not address these arguments because they do not pertain to Petitioner's fifth claim, the only claim under consideration in this habeas proceeding.

Thus, Petitioner fails to show that the denial of her motion was unreasonable or arbitrary.  Accordingly, Petitioner's claim of a violation of her Sixth Amendment right to have retained counsel of her choice is without merit.

## CONCLUSION

For the foregoing reasons, the state court's adjudication of Petitioner's claim did not result in a decision that was contrary to, or involve an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.  A certificate of appealability will not issue.  Petitioner has failed to make a substantial showing that her claim amounted to a denial of her constitutional rights or demonstrate that a reasonable jurist would find this Court's denial of her claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   Petitioner may

seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of Respondents and close the file.

IT IS SO ORDERED.

DATED: October 21, 2013

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

ROSEMARY BELLE GREENLAW,

    Plaintiff,

 v.

SHEILA MITCHELL, ET AL. et al,

    Defendant.

Case Number: CV12-01598 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 21, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Rosemary Belle Greenlaw
110 Hobson Street
San Jose, CA 95110-2224

Dated: October 21, 2013

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk